**John L. CURRELL, Respondent,**

v.

**STATE of Minnesota, DEPARTMENT OF TRANSPORTATION, by Warren Spannaus, Its Attorney General, and by James Harrington, Its Commissioner of Transportation, Appellant.**

No. 49297.

Supreme Court of Minnesota.

March 21, 1980.

Warren Spannaus, Atty. Gen., Eric B. Schultz, Deputy Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

D. D. Wozniak, St. Paul, for respondent.

Heard before OTIS, ROGOSHESKE, and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

██ The State of Minnesota appeals from an order of the district court denying its alternative motion for amended findings of fact, conclusions of law, and order for judgment or a new trial in a mandamus proceeding brought by landowner John L. Currell to compel the state to initiate condemnation proceedings for a taking of highway access. The sole issue raised is whether the owner of land abutting a frontage road must be compensated for a taking when connectors between the frontage road and an expressway are closed even though his property never abutted the main-traveled lanes of the street previously converted into a limited access highway. We conclude that under such circumstances no taking occurs and, therefore, we reverse. The record suggests, however, that the property in question may have been owned as part of a single tract by a previous owner and that the state may have provided the frontage road in lieu of paying severance damages for loss of access when the abutting portion of the tract was condemned. In such case the present owner may have succeeded to a right of access which cannot now be taken without compensation. We therefore remand for a new trial.

John L. Currell owns the east 40 feet of Lots 4 and 5, Block 33, Suburban Hills, in the County of Ramsey. He purchased the property in 1955 and improved it with a 32- by 50-foot cement block building with a brick veneer front. The building has been used as a real estate office. At the time Currell purchased the property, it abutted English Street on the east; on the north it abutted a frontage road built and maintained by the state to service Trunk Highway No. 12. The frontage road connected with the main-traveled lanes of the highway (both eastbound and westbound) at points approximately 1 block east and 1 block west of the subject property. In October 1973, the state upgraded Trunk Highway No. 12 to I–94 and closed these connectors. The nearest access to the expressway is now at the intersection of Burns Avenue and Trunk Highway No. 61, approximately 0.45 mile away. Reaching this intersection from the Currell property involves using a route that threads through a residential area.

In 1933, Hudson Road (then called Hastings Avenue) was designated as Temporary Trunk Highway No. 12 by an order of the commissioner of highways. At that time Lot 1, immediately north of the present Currell property, abutted on Hudson Road, but Currell's Lots 4 and 5 did not. By subsequent orders of the commissioner and by subsequent construction during the late 1940's, the main four lanes of No. 12 were rebuilt and permanently established as a limited access highway. As part of that project, the state condemned Lot 1, bringing the right-of-way of No. 12 to the northern boundary of the present Currell property, and constructed a frontage road which afforded two access points to the main-traveled lanes, each 1 block distant from the present Currell property. The record is unclear whether Lots 1, 4, and 5 were owned by a single owner, whether they constituted a single tract, and whether Lots 4 and 5 suffered severance damages due to loss of access for which the frontage road was designed to compensate.

In *Johnson Bros. Grocery v. State, Dept. of Highways*, 304 Minn. 75, 229 N.W.2d 504 (1975), a case arising out of the same highway construction project, this court found a compensable taking. Johnson Bros. had had direct and unlimited access to Hudson Road by virtue of abutting ownership. When No. 12 was constructed, Hudson Road was included within the right-of-way and used as a frontage road. At a point immediately across from the Johnson Bros. property, the state constructed a connector between Hudson Road and the main-traveled lanes of No. 12. There was no compensation for partial limitation of access. In 1973, the state closed the connector as part of the I–94 project. We concluded that the state had taken two steps to accomplish what it could not have done in one without paying compensation and held, therefore, that a constitutionally compensable taking had occurred.

On the present record, we are compelled to conclude that the first step of the taking as it occurred in *Johnson Bros.* is not present. Since the property now owned by Currell never abutted the main-traveled lanes of Hudson Road, it cannot be said that the state substituted a frontage road with reasonably suitable and convenient access to the expressway for the direct access that existed in the 1940's. There having been no right of direct access, the closing of the connectors in 1973 is without legal significance. Currell's damage is not different in kind from other members of the general public who were accustomed to use the points of ingress and egress now closed.

■ The record suggests, however, that Currell may have succeeded to a right of access possessed by his predecessor in title. Currell asserts that the owner of the condemned Lot 1, which abutted Hudson Road, also owned Lots 4 and 5. The state responds that the record is unclear but has offered no evidence rebutting the assertion. If, in fact, there was a single owner and the three lots, although prima facie distinct, were shown to have been used as a single tract, Lots 4 and 5 may well have been damaged when direct access to the main-traveled lanes, which they had previously

enjoyed via Lot 1, was taken. If the state at that time provided a frontage road in lieu of paying severance damages, this case would, in our view, be controlled by *Johnson Bros.* Fairness considerations persuade us that a new trial should be held at which evidence on these issues can be presented.

Reversed and remanded for a new trial.

YETKA, Justice (dissenting).

I would affirm the trial court and compel the state to initiate condemnation proceedings. I have two reasons why we should so hold.

First, I think the record is sufficiently clear that Currell's predecessors in title did in fact own Lot 1 as well as Lots 4 and 5 at the time the service road was constructed in the 1940's. This brings the case clearly within the *Johnson Bros.* case cited by the majority.

Secondly, even if Currell's predecessors did not own Lot 1 at the time of the construction of the service road, I believe it would be immaterial in deciding this case. It is admitted by the state that Currell's business use of the property, upon construction of I–94 in 1973, has been severely restricted by closing off the service road. Indeed, access is very difficult, and visibility of the building formerly possible has been cut off not only by the highway, but also by sound barriers. The building was used by a real estate business which had to be moved by reason of the loss of access.

It is clearly the law in Minnesota that one who owns land across which a street or highway is built may, as a result of that highway, gain permanent access rights which cannot be taken without compensation. What difference does it make if a street or highway is moved and, as a result of the change in design or construction, access is provided which previously didn't exist? The latter should be protected as well as the former.

If landowners abutting the old Hudson Road of the 1930's had access and, if by reason of construction in the 1930's and 1940's other landowners are given access either to the highway directly or indirectly by a service road, it makes no sense to me to hold that the landowners at the time of the original highway construction have a legally protected right but landowners abutting a revision of the highway do not.

KELLY, Justice (dissenting).

I join in the dissent of Justice Yetka.

TODD, J., took no part in the consideration or decision of this case.