**BULLETIN PUBLISHING CORPORATION,**
Appellant,

v.

**CITY OF COTTAGE GROVE,**
Respondent.

No. C8–85–1111.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Richard A. Grayson, St. Paul, for appellant.

Jack W. Clinton, Cottage Grove, for respondent.

Heard, considered and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

In 1981, the City of Cottage Grove condemned some property belonging to Bulletin Publishing Corporation. The Commissioners awarded the Bulletin $5,850 for the taking and $300 for appraisal fees. The Bulletin appealed the Commissioners' award and the district court then awarded an additional $1,000 for loss of "signage" and $500 for change of address costs. The

Bulletin moved for amended findings or for new trial and now appeals denial of that motion. We affirm.

## FACTS

The State of Minnesota constructed an overpass on Highway 61 at 80th Street in Cottage Grove. To widen 80th Street, the City of Cottage Grove (respondent) condemned certain property under the quick-take provision of Minn.Stat. § 117.042 (1982).

Bulletin Publishing Corp. (appellant) is the owner of some property involved in this condemnation. Since 1975, the Bulletin has conducted three operations on its property: a) a weekly newspaper; b) a deputy registrar office for drivers' licenses; and c) a retail office and stationery store.

Before the taking, the Bulletin's land was an "L" shaped parcel of approximately 30,125 square feet. The "leg" of the "L" was 175 feet long, north to south, and approximately 30 feet wide.

The Bulletin's only access to 80th Street was by means of the 30 foot wide base of the "L." However, the Bulletin used that access strip for parking. Therefore, vehicles reached the property over a strip of land 20 feet wide immediately adjacent and to the west side of the Bulletin property. That strip of land was owned by the Pommerenings. The Bulletin had no easement rights in this property and never paid for the use of the land. No traffic control existed at this access strip.

After the city acquired the Pommerening land in fee, it conveyed to the Bulletin and MAC properties (a pet hospital next to the Bulletin) appurtenant easements to the property for access and driveway purposes.

However, since the taking, access to 80th Street has been provided only on the north side of the Bulletin property. Access to 80th Street from the Bulletin is by traveling East Point Douglas Road to the intersection of 80th Street, where there is a traffic light. This means that customers must now enter the rear of the Bulletin

building, which is unfinished and less presentable than the front.

On February 28, 1983, the commissioners awarded the Bulletin $5,850 for the land taken, plus $300 for appraisal fees, conditioned on the city granting to the public the right to use the strip of land acquired from the Pommerenings as a street.

In the commissioners' opinion, there were no severance damages to the Bulletin property. They concluded that the taking did not adversely affect the shape of the parcel and did not affect the Bulletin's expansion area. Moreover, they concluded, access to the property was improved, and visibility of the site after the taking was good.

The trial court affirmed the commissioners' award regarding the cost of the land acquired ($2.00 per square foot, for a total of $5,850). The trial court also awarded $1,000 in severance damages for "lost signage" and $500 in costs for change of address.

### ISSUES

1. Did the trial court err in finding that the taking did not substantially impair the Bulletin's right to reasonably suitable and convenient access to 80th Street?

2. Did the trial court err in its severance award of $1,500?

### ANALYSIS

■ 1. The trial court found that the taking did not substantially impair the Bulletin's right to reasonably convenient and suitable access to 80th Street. Appellant argues that this finding is erroneous.

In a seminal case, the Minnesota Supreme Court ruled that reasonable access is a fact question:

What is reasonable ingress and egress is a fact question. If the jury decides that the location of the proposed interchange substantially impairs plaintiffs' right to reasonably convenient and suitable access to the main thoroughfare, plaintiffs are entitled to damages. Not every denial of immediate or convenient access,

however, will support a claim for damages unless the aggravation is to a degree we have here proscribed.

*Hendrickson v. State*, 267 Minn. 436, 445–46, 127 N.W.2d 165, 172–73 (1964) (footnotes omitted); *see State v. Gannons Inc.*, 275 Minn. 14, 145 N.W.2d 321 (1966).

The supreme court later clarified the access analysis:

[A]ny diminution in market value of the property caused by substantial impairment of the right to reasonably convenient and suitable access to the main thoroughfare in at least one direction is a deprivation of property for which compensation must be paid.

*Johnson Brothers Grocery, Inc. v. State Department of Highways*, 304 Minn. 75, 229 N.W.2d 504, 505 (1975).

Thus, to prove its case regarding access damages, the Bulletin had to illustrate that the change in access affected the property's market value.

However, the trial court stated in its memorandum accompanying the original findings and conclusions, that the testimony of the Bulletin's two appraisers lacked credibility.

The proper measure of damages is the difference in market value of the property alleged to have been injured before and after the acts complained of, *unless the cost of restoring the property to its natural condition is shown to be less than the difference in value, in which case the cost of restoration is the measure of relief to which the property owner is entitled.*

*Sallden v. City of Little Falls*, 102 Minn. 358, 361–62, 113 N.W. 884, 885 (1907) (emphasis supplied); *see Alexandria Lake Area Service Region v. Johnson*, 295 N.W.2d 588 (Minn.1980).

The trial court correctly noted that appellant's experts alternated between discussing market value difference and cost-to-cure. They did not indicate that cost-to-cure was less than the market value difference. Moreover, the experts' report alone was confusing enough to justify the trial

court's disbelief. Therefore, the Bulletin failed to make its case regarding access damages.

The trial court also stated that access by East Point Douglas Road, a distance of only several hundred additional feet, is reasonably convenient access, and that the presence of a traffic light makes turning convenient.

There was adequate evidence to support the trial court's finding regarding access. There was no error.

■ 2. Appellant also argues that severance damages awarded were inadequate, given the change in building orientation, land shape, and parking.

The Minnesota Constitution confers a right to compensation for damaging as well as for taking private property. *Hendrickson*, 267 Minn. at 439, 127 N.W.2d at 169 (citing Minn. Const. art. 1, § 13).

> Thus, where only a part of a tract of land is taken, the landowner is entitled to damages for loss to the part remaining as well as to the part actually taken. In such a case, the measure of damages is ordinarily the difference between the market value of the entire tract before the taking and the market value of what is left after the taking. However, in certain cases, damages have been awarded on the basis of the cost of restoring the remaining property to a condition that will make it available for use after the taking; i.e., reconstruction costs.

*Alexandria Lake Area Service Region v. Johnson*, 295 N.W.2d 588, 590 (Minn.1980) (citations omitted).

> This court has reiterated the standard: The general rule for damages in a condemnation action is that the owner is entitled to the difference in market value immediately before the taking and the market value of the remaining tract after the taking, excluding from consideration general benefits and deducting special benefits.

*City of Chisago City v. Holt*, 360 N.W.2d 390, 392 (Minn.Ct.App.1985) (citations and emphasis omitted).

Again, the trial court's finding that the Bulletin's appraisals were not credible defeats a more substantial severance award.

There was testimony by two commissioners that the taking did not diminish the value of the Bulletin building or operations. Therefore, there was evidence to support the trial court's conclusion that the only severance damages suffered as a result of the taking were $1,000 for loss of signage and $500 for change of address costs.

■ Appellant also argues that the trial court erred by treating the easement and East Point Douglas Road as a "special benefit" to the Bulletin. *See Holt*, 360 N.W.2d 390; *State by Lord v. Hayden Miller Co.*, 263 Minn. 29, 116 N.W.2d 535 (1962).

This argument is not well founded. The trial court did not subtract any special benefits from the severance amount awarded the Bulletin. Rather, the trial court found that the Bulletin did not prove it sustained substantial impairment of its right to reasonably convenient and suitable access to and from 80th Street. The court also found that the only severance damages were $500 for change of address costs and $1,000 for loss of signage.

The court's statement that the Bulletin benefited from the easement granted by the city was a general comment. The trial court did not deduct any special benefit in its calculation of the severance award. There was no error.

### DECISION

We affirm the decision of the trial court.